IGLESIA CATÓLICA, APOSTÓLICA Y ROMANA DE PUERTO RICO, DIÓCESIS DE SAN JUAN y su IGLESIA PARROQUIAL DE HATILLO, P. R., demandantes y apeladas, *v.* MUNICIPIO DE HATILLO y FRANCISCO RÍOS, demandados y apelantes.

Núm. 8251.—*Sometido:* Mayo 2, 1941. *Resuelto:* Julio 21, 1941.

*Luis Mercader* y *Pablo J. Aguilar,* abogados de los apelantes; *Heriberto Torres Solá,* abogado de las apeladas.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

A virtud de la Ley aprobada el 10 de marzo de 1904 "confiriendo jurisdicción original al Tribunal Supremo de Puerto Rico para conocer sobre ciertas propiedades reclamadas por la Iglesia Católica Romana de Puerto Rico y resolver acerca de las mismas" (Leyes de 1904, pág. 124), la Iglesia, el día 6 de junio de 1904 radicó ante este Tribunal una demanda contra los Municipios de Ciales, Camuy (que entonces incluía a Hatillo), Río Grande, Comerío, Patillas (Cidra), Humacao, Fajardo y Adjuntas, alegando, en cuanto a las propiedades radicadas en Hatillo, lo siguiente:

"La Iglesia Católica, Apostólica Romana, está actualmente, y desde hace muchos años, en la posesión legítima, quieta y pacífica, de las siguientes iglesias y templos dedicados y consagrados al culto católico:

"1.—.

"2.—Una Iglesia parroquial situada frente a la plaza principal de HATILLO, con una superficie, incluso el atrio, de 428 metros 61 centímetros. Colindante al Norte con la calle Norte de la Plaza; al Sud con la calle Sud de la plaza; al Este con casa de don Miguel Arrieta y al Oeste con la plaza principal."

El día 24 de junio de 1904, el Tribunal Supremo dictó una providencia dando por presentada y admitiendo la demanda y dió traslado de ella por medio de cartas-órdenes a los Jueces Municipales respectivos, a los Ayuntamientos demandados, en las personas de sus respectivos alcaldes, para que la contestaran en el improrrogable término de veinte días, dentro del cual verificarían su comparecencia en el procedimiento entregándoseles en el acto del emplazamiento la copia que se

acompañaba, cuya providencia se envió el día 27 de junio de 1904 al Juez Municipal de Camuy para su cumplimiento, lo que hizo notificando al Alcalde de Camuy don Laurentino Estrella con copia de la demanda y de la providencia el día 30 de junio de 1904.

Nada más se hizo en el pleito hasta el día 10 de enero de 1907 o sea dos años y seis meses después, en que la parte demandante radicó una moción haciendo constar y solicitando:

"Que no habiendo presentado los Ayuntamientos de *Camuy*, Río Grande, Comerío, Patillas, Cayey y Humacao, su contestación, dentro del término señalado en la citación, procede de conformidad con lo establecido en el número 2 del artículo 194 del Código de Enjuiciamiento Civil, y así lo solicito, que por el Secretario de esta Hon. Corte *se tome razón de la rebeldía de los dichos demandados.*" (Itálicas nuestras.)

Y el 17 de enero de 1907 este Tribunal Supremo dictó un "como se pide" a la anterior moción.

Transcurren un año y nueve meses y entonces la demandante radicó el 5 de octubre de 1908 una moción en la que alegó que habiéndose anotado la rebeldía a los Ayuntamientos demandados y entre ellos a Camuy solicitaba se le concediera lo pedido en la demanda, con costas.

El día 21 de octubre de 1908 este tribunal dictó sentencia, la que en cuanto al Ayuntamiento de Camuy (Hatillo) dice así:

"Este caso ha sido sometido a resolución de este tribunal por virtud de una moción presentada por la parte demandante solicitando que se dicte sentencia en armonía con lo solicitado en la demanda, *por no haber comparecido la parte demandada, ni contestado la demanda, y haberse anotado su rebeldía oportunamente;* y la Corte, vista la moción y los autos del caso, declara aquélla con lugar, y en su consecuencia, ordena, adjudica y decreta, por la presente, que el demandante recobre de los demandados lo que solicita en su demanda, declarándose que las casas y solares que se describen más adelante corresponden en plena propiedad y dominio al demandante, y que el título de éste, que por la presente se le reconoce definitivamente,

sea válido y eficaz para todos los efectos que puedan surgir con motivo de cualesquiera reclamaciones de los demandados sobre dichos bienes, o cualquiera parte de los mismos, y se ordena además, que todas las reclamaciones que sobre dichos bienes tengan los demandados, o cualquiera otras personas que reclamen o puedan reclamar los expresados bienes, o cualesquiera parte de los mismos, por derechos derivados de dichos demandados, se consideren nulas y sin fundamento alguno y de ningún valor; y por la presente se impide y prohibe, definitivamente, a dichos demandados que establezcan reclamación alguna, o aduzcan título de cualquier clase, con respecto a dichos bienes, o cualquiera parte de los mismos.

"Dichas propiedades se describen en la forma siguiente:

"2.—Una iglesia parroquial situada frente a la plaza principal de Hatillo, *con una superficie incluso el atrio, de 428 metros 61 cent.* Colindante al Norte con la calle Norte de la plaza; al Sud con la calle Sud de la plaza; al Este con casa de D. Miguel Arrieta y al Oeste con la plaza principal.

"Además se ordena, adjudica y decreta, por la presente, que el demandante recobre todas las costas de este pleito, que se tasan en la suma de (no consta), y que se libre ejecución contra los bienes de los demandados para satisfacer esta sentencia.

"Así lo pronunciamos, mandamos y firmamos. (Firmados) José C. Hernández; José María Figueras; J. H. MacLeary; Adolph G. Wolf."

Basándose en la anterior sentencia la Iglesia Católica, Apostólica y Romana de Puerto Rico y su Iglesia Parroquial de Hatillo radicaron el 19 de julio de 1938 ante la Corte de Distrito de Arecibo una demanda en contra del Municipio de Hatillo y Francisco Ríos, en acción para resolver las reclamaciones opuestas sobre propiedad inmueble y otros extremos, alegando ser dueñas y poseedoras de un edificio de cemento destinado al culto católico en la Parroquia de Hatillo enclavado en un solar cuyas colindancias siempre han sido: por el Norte con la calle Norte de la plaza de Hatillo; al Sur con la calle Sur de dicha plaza; al Este, casa que fué de Miguel Arrieta, luego Sucn. Manuel Circuns, y al Oeste con

la plaza principal de Hatillo. (Es de notarse que en la demanda no se hace constar el área superficial del solar); que al cercar la Iglesia en el año 1921, el Presbítero don José C. Delgado, por economía, sólo cercó una parte del atrio en la forma en que está actualmente, a pesar de haberse utilizado siempre por la Iglesia Parroquial de Hatillo la totalidad de su atrio dentro de las expresadas colindancias; que las demandantes obtuvieron la declaración del dominio a su favor de la finca descrita a virtud de la sentencia dictada en el pleito núm. 4 del Tribunal Supremo, antes mencionado, la que es firme; que el municipio demandado, alegando ser dueño de una parte del solar y atrio de las demandantes, concedió, por ordenanza aprobada el 24 de marzo de 1938, permiso al codemandado Francisco Ríos para construir una pequeña edificación de concreto, que se destinaría al negocio de cafetín, en una parcela de once pies de frente por veinticinco de fondo que enclava dentro de la finca de los demandantes; que el codemandado Francisco Ríos está construyendo una edificación en forma de quiosco en violación a los derechos dominicales de las demandantes quienes en ningún momento han enagenado a favor del Municipio de Hatillo ni de ninguna otra persona parte alguna del terreno enclavado dentro de las colindancias cuyo dominio le fué reconocido por la Corte Suprema de Puerto Rico, y que por el contrario han protestado de toda tentativa por personas extrañas a ellas, de utilizar parte alguna de su solar y en particular para la instalación de quioscos. Termina la demanda solicitando que de acuerdo con el artículo 282 del Código de Enjuiciamiento Civil se dicte sentencia decretando que las demandantes son dueñas en absoluto y con derecho a la más legal y pacífica posesión de todo el predio de terreno y edificio descrito en la demanda y que los demandados, ni ninguna otra persona o entidad que derive derechos de ellos, tienen derecho a poseer, disfrutar o en forma alguna disponer de toda o de parte de dicha finca, y que los deman-

dados dejen a la libre disposición de los demandantes el solar donde está construyendo el codemandado Francisco Ríos el quiosco.

Conjuntamente con la demanda los demandantes radicaron una solicitud de *injunction pendente lite* para que los demandados se abstuvieran de continuar la construcción del quiosco, a cuya solicitud se opusieron los demandados, y la corte después de celebrar una vista la declaró con lugar y libró el auto solicitado previa prestación de una fianza de $1,500.

Los demandados al contestar la demanda admitieron algunos hechos y negaron otros y como defensa alegaron, entre otros particulares, que la sentencia dictada por esta Corte Suprema el 21 de octubre de 1908 es nula e ineficaz porque no se emplazó al Municipio demandado personalmente por el Márshal de la Corte de Distrito de Arecibo ni persona alguna particular mayor de 18 años sin ser parte ni tener interés en el asunto ni se juró el diligenciamiento en la forma exigida por el Código de Enjuiciamiento Civil vigente; porque el Municipio de Camuy no podía allanarse a la demanda y la rebeldía anotada equivalía a un simulado allanamiento; porque si procedía la rebeldía no se celebró juicio alguno contra el demandado; porque no se le notificó el fallo en forma legal; porque no se ejecutó la sentencia dentro de los cinco años y no se ha presentado solicitud jurada expresando las razones para ejecutarla después de dicho término; porque han transcurrido más de veinte años sin que la demandante hiciera gestión para ejecutarla habiendo incurrido en ''laches'', en ''estoppel'' y hasta en la prescripción que provee el artículo 1864 del Código Civil.

Alegaron además los demandados que el Municipio de Hatillo se fundó hace más de setenta años en un predio de terreno de 9.89 cuerdas donado por Agustín Ruiz Miranda, habiendo tomado posesión del mismo incluyendo el terreno donde ubica el edificio de la iglesia que detentan los deman-

dantes; que hasta el año 1920 los demandantes tenían el uso de los terrenos y edificio tan solo en una extensión de unos 428 metros cuadrados y que en dicha fecha el Padre Delgado con un grupo de vecinos con el fin de ensanchar el atrio y erigir una verja de concreto obtuvieron del entonces Alcalde de Hatillo, José Casanovas Marrero, un permiso revocable para usar dos metros de ancho a cada lado Norte y Sud del atrio hasta entonces cercado de madera, entrando de ese modo los demandantes a usar tal ensanche dentro de la verja de concreto que se levantó con la colecta de los vecinos, alegando los demandados que los demandantes vienen detentando y disfrutando 1,102.50 metros cuadrados dentro de dicha verja de concreto. Continúan alegando los demandados como defensa, lo siguiente:

"Que el Municipio de Hatillo, y a partir de 1920 ó 1921 en que se edificó la verja de concreto antes aludida, continuó poseyendo, materialmente y como dueño, como lo venía haciendo desde casi un siglo antes con motivo de la donación de 9.89 cuerdas, pacífica y públicamente, las cuatro parcelas alrededor de dicha verja (las que describe), habiéndolas dedicado... al servicio de calles para tránsito público y la parte contigua e inmediata a los lados Norte y Sud de dicha verja a concesiones de usufructo para erecciones de kioskos para venta de efectos; para poner máquinas de caballitos y otras análogas y fijar temporalmente casuchas y picas en los días de las fiestas patronales; y alegan los demandados que si algún derecho o acción tuvieran los demandantes en las parcelas expresadas estaría prescrito a virtud de los artículos 1857, 1859 y 1863 del Código Civil de Puerto Rico, ed. 1930.

"Que el demandado Municipio de Hatillo en 1927 y con el objeto de separar, de las parcelas Norte y Sud antes descritas la parte destinada a usufructo de kioscos y picas para tiempos festivos, de la otra propiamente para calles públicas, fijó un encintado de concreto que cubre un ancho de unos 18 pies desde la verja de concreto hacia la calle, y que va todo el largo en unos 137 pies de esos lados Norte y Sud en línea con los laterales de la plaza principal; y en 1933 el propio Municipio de Hatillo fabricó, partiendo de la verja al lado Poniente hacia la calle frente a la plaza, una acera de concreto que tiene unos dos metros de ancho en todo el frente de encintado Norte a Sur.

"Que el demandado Francisco Ríos, por adquisiciones de usu-fructos a personas varias que lo vendieron a aquél con consentimiento del municipio y por concesiones directas del mismo municipio a él directamente, y desde el 1923, viene poseyendo en usufructo una porción del terreno municipal en unos 11 pies ‑de frente por 25 de fondo, lindando al frente o Poniente la acera del municipio que da a la calle frente a la Plaza; al Norte la calle Norte separado por el encintado municipal ya referido; al Sud, la verja de la iglesia según se explicó; y al Saliente, resto de los terrenos municipales encerrados por el expresado encintado; y alega dicho demandado Ríos que desde el año 1923 hasta que la demandante obtuvo contra él la orden de injunction pendente lite en julio de 1938, él ha estado gozando y poseyendo de buena fe su indicado usufructo municipal, pacífica y públicamente, sin interrupción, como tal dueño, ocupando y explotando el terreno con casetas de madera, techo de zinc, piso de concreto, instalación de agua y sanitaria, y eléctrica, todo en una edificación fija, sin que dichos demandantes protestaran de tal cosa, hasta julio de 1938, por lo que cualquier derecho o acción que aleguen tener contra él estaría prescrito a virtud de los artículos 1857 y 1864 del Código Civil de Puerto Rico, ed. 1930."

Celebrado el juicio la corte inferior dictó sentencia por la que declaró con lugar la demanda y cuya parte disposi-tiva dice así:

"Por las razones expuestas, se dicta sentencia declarando: que a virtud de un título reconocido por sentencia firme, la demandante es dueña del edificio y solar que se describe en el hecho tercero de la demanda.

"Que el Municipio de Hatillo no puede ceder, ni el otro deman-dado edificar, en el solar donde empezó a construir una caseta de concreto, y el cual más particularmente se describe en el hecho sexto de la demanda.

"Que los demandados, sus cesionarios, sucesores o agentes, quedan por esta sentencia impedidos de continuar o autorizar la referida construcción, y deben dejar a la libre disposición de la parte deman-dante el solar que la misma ocupa, y cualquier parte de la finca descrita en el hecho tercero de la demanda. Se imponen las costas a los demandados, excluyendo honorarios de abogado."

Contra esta sentencia los demandados establecieron el presente recurso alegando la corte inferior cometió nueve errores al decretar el injunction "pendente lite"; al resolver

que la sentencia del Tribunal Supremo con jurisdicción original era válida y eficaz; al decidir que tal fallo es cosa juzgada; al resolver que esa sentencia había sido pronunciada por un tribunal superior lo que le vedaba entrar en su consideración y determinar su validez; al resolver que la posesión de los demandados sobre los terrenos alrededor de la Iglesia y sus verjas era meramente tolerada por las demandantes; al extender el alcance de la sentencia del Tribunal Supremo; al resolver que correspondía a los demandados probar que el solar y edificio de Ríos no estaban comprendidos en la superficie reconocida por dicha sentencia; al conceder a los demandantes más que lo pedido por ellos mismos y al decretar con lugar la demanda con costas, y pesar erróneamente la prueba aportada.

██ La resolución decretando la expedición del injunction *pendente lite* era apelable, de acuerdo con el inciso 3 del artículo 295 del Código de Enjuiciamiento Civil y revisar ahora si procedía o no, después de fallado el caso en sus méritos, no conduciría a ningún fin práctico.

██ No consideramos necesario entrar a discutir y resolver los distintos señalamientos que hacen los apelantes en cuanto a los supuestos errores cometidos por la corte inferior en relación con la eficacia o nulidad de la sentencia dictada por este Tribunal Supremo en el caso de la Iglesia contra el Municipio de Camuy, ya que como demostraremos más adelante, aun asumiendo la validez de dicha sentencia, los terrenos objeto del presente litigio no están comprendidos dentro de los términos de la misma, y además porque el nervio de la decisión de la corte inferior no fué ése sino el que se desprende de los siguientes párrafos de la opinión que emitió para sostener su sentencia.

"Demostrada por prueba documental la sentencia que reconoció el título de la Iglesia al edificio y solar que se describe en el hecho tercero de la demanda, *el nervio de la controversia se limita a dos puntos principales: primero, si después de la fecha del referido fallo, la demandante ha cedido o perdido en alguna forma su derecho*

*al dominio y posesión de tales bienes; segundo, si el sitio cedido por
el Municipio a Francisco Ríos para edificar, se encuentra dentro de
los límites del solar reconocido a la Iglesia por dicha sentencia.*

"No hay prueba alguna que demuestre que la demandante haya
cedido su título. Tampoco podemos inferir que haya perdido su
derecho dominical ni la posesión civil, por cualquier tolerancia del
uso del atrio, porque los actos meramente tolerados no afectan a la
posesión (artículos 373 y 1842 del Código Civil).

"Con respecto al segundo punto, la demandante presentó prueba
específica en forma convincente, que fija el sitio de la edificación
de Ríos, dentro del solar que le fué reconocido a la Iglesia por la
sentencia del Tribunal Supremo. *No se alegó expresamente por los
demandados que el sitio concedido a Ríos para edificar se encuentre
fuera de los límites reconocidos por tal sentencia,* porque ellos no
reconocen el fallo como válido a pesar de ser cosa juzgada. *Tampoco
presentaron prueba concreta para demostrar cualquier diferencia
específica en los límites.*" (Itálicas nuestras.)

De manera que en último análisis la cuestión primordial
envuelta en este litigio es si la edificación que está constru-
yendo el codemandado Francisco Ríos con autorización del
otro codemandado Municipio de Hatillo se encuentra dentro
de los límites del solar reconocido a la demandante por la
sentencia anterior, es decir, si como dice el sexto señala-
miento la corte inferior erró al extender el alcance de la con-
cesión del Tribunal Supremo en su sentencia. Intimamente
relacionado con éste está el séptimo que se refiere al haber
resuelto la corte que correspondía a los demandados probar
que el solar y edificio de Ríos no estaban comprendidos en
dicho solar.

La resolución de estos errores requiere un examen y aná-
lisis de la prueba presentada por las partes. La de las de-
mandantes demostró lo siguiente:

Por la sentencia de este Tribunal Supremo en el caso an-
terior, supra, se reconoció a la Iglesia Católica Apostólica y
Romana de Puerto Rico en el Municipio de Hatillo lo si-
guiente:

"2.—Una iglesia parroquial situada frente a la plaza principal
*de Hatillo, con una superficie incluso el atrio, de 428 metros 61 cent.*

Colindante al Norte con la calle Norte de la plaza; al Sud con la calle Sud de la plaza; al Este con casa de D. Miguel Arrieta y al Oeste con la plaza principal." (Itálicas nuestras.)

Debemos detenernos aquí un momento para decir que no podemos aceptar, como pretenden las demandantes apeladas, que en la anterior descripción se incurrió en un error clerical al preparar el escrito inicial en su demanda en el año 1904 en que se basó la sentencia de esta Corte Suprema, en el sentido de que la frase "incluso el atrio" debió colocarse después de la palabra "centímetros" en vez de después de la palabra "superficie", de manera que la descripción leyera así:

"Una iglesia parroquial situada frente a la plaza principal de Hatillo con una superficie de 428 metros 61 centímetros, incluso el atrio, colindante, etc."

Si, como han sostenido y sostienen las apeladas, la sentencia en el caso anterior constituye el título a sus bienes en Hatillo no pueden ahora tratar de variar la descripción que ella contiene, obtenida, no a virtud de prueba presentada, pues la sentencia se dictó en rebeldía, sino a virtud de lo que la propia demandante hizo constar en su demanda.

La prueba testifical de las demandantes consistió en la declaración de los testigos José C. Delgado, natural de Hatillo y cura párroco de dicho pueblo desde 1920 a 1923; Vicente López González, actual cura párroco de Hatillo y de Cecilio Quercadó Molina, administrador de los bienes de la Iglesia Católica.

El padre Delgado declaró, en síntesis, que tiene 53 años y nació en Hatillo; describió la forma del edificio de la iglesia y su atrio dando sus colindancias; que el atrio de la iglesia se empleaba para reunión de los fieles para esperar los servicios religiosos y para amarrar los caballos en que venían del campo; que cuando había fiestas se establecían picas y ponían puestos de alimentos y bebidas; que desde la verja actual a las calles Norte, Sur y Este hay cinco metros y pico

de distancia y por el Oeste más de diez metros; que esa verja fué construída en el año 1921 siendo él párroco y que no se puso por toda la colindancia primero, por economía pues había poco dinero, y segundo, por el ornato público; que para poner los puestos de refrescos le pedían permiso a él y si hacían ruido los mandaba a bajar la voz para que no interrumpieran el culto religioso; que los kioscos eran de madera, movibles que se quitaban después de las fiestas; que cuando construyó la verja había armonía entre la Iglesia y el Municipio y no pidió permiso a nadie para hacerla porque consideraba el solar de la Iglesia y tenía fondos y puso parte de su dinero; que nadie le impidió la construcción. En el contrainterrogatorio declaró que el pueblo de Hatillo se construyó en cesiones que alguien hizo, no sabe quién; que cuando él fué a Hatillo de cura párroco en 1920 la Iglesia no tenía ninguna verja en el verdadero sentido; que no había nada de madera ni los restos de una que hubiera antes; que él hizo una verja nueva de concreto pero no tuvo que ensanchar el atrio *sino que la echó por el mismo límite "en que estaba la anterior, una que existía, que fué en tiempo de España, que en los últimos años la vió derruída; que para construirla no ensanchó el atrio sino por donde hubo antiguamente hace muchos años, otras;* que sabía que existía esa verja muchos años atrás porque la vió cuando niño; que era de ladrillo y madera; que para construir la verja no hizo ningún comité católico; que la hizo con fondos particulares suyos y de amigos de San Juan y algunos católicos de Hatillo que donaban para la Iglesia; que se pensó en formar un comité para recoger fondos pero no se formó nunca ni hizo ninguna visita al Alcalde Pepín Casanovas; que habló con el padre del Alcalde del progreso de la verja pero de nada más; que el atrio no se ensanchó al fabricar la verja; que no se pidió permiso al Alcalde Casanova para ensanchar; que después de la verja a cada lado hay terrenos; que por el Sur había terreno baldío, *público;* que no recuerda si ha-

bía un kiosco de Manuel Circums; que al Norte había terrenos donde se ponían las picas y no había ninguna casa dedicada a kiosko; que entre la calle y la verja se ha hecho un encintado de cemento y lo vió hace cinco o seis años pero no sabe quién lo hizo; que en ese terreno entre la verja y la calle dentro del encintado se ponían casetas y kioskos para vender bebidas y la Iglesia lo permitía porque eran accidentales y se quitaban; que daban permiso sin cobrar nada y no sabe si alguna otra persona cobraba.

El padre Vicente López González declaró que es cura párroco de Hatillo desde 1931; da las mismas colindancias que el anterior testigo; que ese terreno se usaba por los feligreses y en ocasiones de fiestas se dejaba poner puestos de comestibles, dulces y refrescos, picas y "machinas"; que él intervenía en la instalación "como miembro de la comisión de festejos" y él como párroco daba su anuencia y ponía como condición que no hicieran ruido durante los oficios ni levantaran la voz en disputas; que a veces tuvo que salir para que dejaran el ruido y obedecían; que las construcciones eran movibles; que cuando llegó allí encontró un kiosko de madera instalado en la parte Norte rozando con el asfaltado en terrenos de la iglesia; que siempre protestó de la instalación o ampliación de kioskos incluso el del demandado Ríos porque *cree* que esos terrenos son de la Iglesia y porque interrumpen el culto, *más quizás por la segunda razón;* que desde la pared Norte de la Iglesia hasta la verja hay cinco metros y *desde la verja al kiosco hay de cinco a seis metros;* que el terreno que está entre la verja y los kioscos se usa para árboles y flores; reconoció dos fotografías de la Iglesia de Hatillo. En el contrainterrogatorio declaró que el área de la Iglesia es de 428 metros 21 centímetros; que de la verja a la casa de la Sucn. Circums hay una calle que lo separa; que por el frente de la Iglesia se hizo una acera, supone que por el alcalde pues la Iglesia no la costeó; que en 1931 por el lado Norte en el terreno que separa el encin-

tado de la verja había una construcción de madera no sabe de quién aunque vió allí a Francisco Ríos; que lo vió vendiendo refrescos y mantecados y algunas veces le compró; que lo vió allí desde que llegó hasta que lo mudó a la plaza recientemente; que cuando Ríos construyó de concreto protestó; que no sabe si el kiosco de Ríos tenía instalación sanitaria y eléctrica; que cuando llegó a Hatillo al Sur también había una construcción de madera que todavía está allí y no sabe de quién es; que cuando se fué a construir de concreto protestó ante el Alcalde Casanovas por carta porque creía que eran derechos de la Iglesia y el Municipio no tenía derecho a fabricar, y por el ornato público; que las calles alrededor de la Iglesia las ha poseído el municipio y se han puesto máquinas de caballitos; que dentro de los encintados cabían las pequeñas y un año las pusieron pero las quitaron porque no cabían y protestó; que la Comisión de Festejos públicos en la que estaba representada la Iglesia, daba los permisos; que él protestó de los ruidos en el kiosco que administraba Ríos; que el ruido existía desde hace años.

Cecilio Quercadó Molina declaró que es Contable y Administrador de los bienes de la Iglesia; que conoce la Iglesia de Hatillo; que con motivo de este pleito midió dicha propiedad y la Iglesia tenía 428.61 metros y *con el atrio 1,550 metros cuadrados,* comprendidos entre las calles Norte, Sur, la calle que separa el atrio de la plaza y la calle Este llamada J. P. Hernández; que entre las paredes del edificio y las calles hay unas pequeñas parcelas de terreno confundidas dentro de las colindancias. En el contrainterrogatorio declaró que las colindancias de la Iglesia, de acuerdo con las medidas que ha dado, circundan las calles mencionadas; que los 428 metros 61 centímetros es el área de la edificación y da sus medidas; que es administrador de los bienes de la Iglesia hace veinte años pero que no puede decir si durante los últimos años el atrio siempre ha estado igual; que conoce las colindancias por la sentencia la que expresa la cons-

trucción y además colindancias y que de acuerdo con la mensura que hizo la edificación a que se refiere la demanda cae dentro del área; que la sentencia da como una de las colindancias la casa de Arrieta *pero no midió hasta ella porque hay una calle por medio y hubiera tenido que incluirla;* que los *sardinets* están incluídos en su mensura; que no sabe si por el Norte la calle Norte llegaba hasta el edificio propio de la Iglesia más o menos hasta donde existía la verja de madera; que por el poniente midió hasta incluir la acera de la plaza.

El testigo Conrado Monroseau se limitó a identificar varias fotografías tomadas por él las que fueron admitidas como prueba de las demandantes.

La prueba de los demandados consistió en la declaración de los testigos Joaquín Sala, Miguel González Avilés, José Casanovas Marrero, José R. Lacomba, Fernando Velázquez, Francisco Ríos, codemandado, y Pablo Aguilar y prueba documental. Hacemos una síntesis de lo declarado por los testigos.

Joaquín Sala dijo tener setenta y dos años y ser vecino de Hatillo hace cincuenta; que el pueblo de Hatillo se levanta en nueve cuerdas que regaló Agustín Ruiz, según ha oído decir, para edificar la población de Hatillo. Aunque esta contestación era claramente de referencia no se hizo objeción a la misma por ese fundamento sino que el abogado de los demandantes planteó otra cuestión de derecho distinta, la que fué resuelta por la corte inferior en la siguiente forma:

"Hon. Juez. Aunque la corte entiende que no puede variar las disposiciones del Tribunal Supremo sobre el status que estableció con respecto al terreno objeto del pleito a que se refiere la sentencia, *no obstante, pudiera ser que la declaración del testigo pudiera determinar que la casa en construcción, objeto de la demanda, se encuentra fuera del límite reconocido por la sentencia del Tribunal Supremo, y para llegar a esa conclusión cualquier declaración sobre un status anteriormente reconocido pudiera ser considerado por la corte,*

aunque nos reservamos nuestra discreción para no considerar ningún punto que sea contrario a lo dispuesto por el tribunal.'' (Itálicas nuestras.)

Continuó declarando el testigo que conoce dicha parcela de terreno; que conoce la Iglesia desde niño cuando era de madera y luego se construyó de concreto o mampostería hace 65 años; que entonces no tenía verja pues por todos sus lados lo que había era tierra y por el Norte unos escalones de madera; *que cuando se salía de la Iglesia se caía a la tierra, al piso natural* que era la calle; que así estuvo hasta que hicieron el atrio (*sic*) de madera y luego de concreto hace veinte años por el padre Delgado con colectas públicas pues todo el mundo ayudó; que lo sabe porque hace 50 años está en Hatillo y es católico; que antes de la verja de concreto estaba la de madera por el Norte y Sur; que del edificio hasta la verja por el Norte era estrecho como de ocho a diez pies; que al fabricar la de concreto se tomó tres varas a cada lado que cedió el municipio por petición; que eso que concedió el municipio antes era calle natural que todo el mundo andaba por ella y lo gobernaba el municipio pues en tiempos de fiestas ponía casetas para negocio. Al surgir una oposición de las demandantes, la corte resolvió lo siguiente:

"Hon. Juez. La corte resuelve...........*que oye únicamente al testigo para ver si surje algo que demuestre que la construcción objeto de la demanda está fuera de lo que le reconoce el Tribunal Supremo a la Iglesia, o sea, en terrenos de la zona municipal.*" (Itálicas nuestras.)

Continuó el testigo diciendo que el municipio no dedicaba el terreno después de la verja de maderas a nada; que se amarraba ganado por donde quiera; que conoce al codemandado Francisco Ríos; que por el Norte ese terreno del municipio estaba ocupado por un kiosco de madera de Francisco Ríos después de fabricarse la verja en 1921; que el municipio cuando era Alcalde Velázquez hace diez o doce años hizo un sardinet y el kiosco está dentro del mismo; que al lado

Sur también hay kioscos de Manuel Circums fuera de la verja entre ésta y la calle. En el contrainterrogatorio declaró que los terrenos son del municipio porque se pedía permiso a éste para instalar los kioscos; que no sabe si le pedían permiso al cura; que lo sabe porque veía a los peticionarios con el Alcalde en la calle, en la plaza, pues es un pueblo pequeño, sin sopa como se dice; que cuando se construyó la verja de cemento quedaba parte de la de madera y otra se la había llevado la gente.

Miguel González Avilés, empleado en la Colecturía de Camuy, declaró que vive en Hatillo desde el año 1918 hasta ahora; que conoce la Iglesia y es católico; que antes de 1921 la verja que rodeaba la Iglesia era de madera y el terreno hacia los lados lo ocupaba el municipio; de pasto y se usaba para las fiestas en poner ranchones y máquinas de caballitos; que el municipio cobraba diariamente por esos artefactos; que al hacerse la verja de concreto él fué tesorero de la comisión compuesta del Alcalde José Casanovas, Rafael García y el padre del alcalde; que los fondos se dedicaron para pagar la mano de obra y materiales; que al fabricar la verja se tomó, con permiso del alcalde Casanovas, a los lados derecho e izquierdo como tres o cuatro metros; que después de la verja el municipio, siendo Alcalde Velázquez, hizo un sardinet alrededor de los jardines; que la comisión era para beneficio de la Iglesia pues todos eran católicos y que así fué que el padre Delgado pudo hacer la verja. Reconoció su firma y la del Colector E. Monroseau en varios recibos de contribuciones de los años 1928 a 1938 sobre propiedad de Ríos en Hatillo. En el contrainterrogatorio contestó que llegó a Hatillo en el año 1918 y no sabe quién usufructuaba los terrenos alrededor de la Iglesia antes de dicha fecha; que en 1918 la Iglesia tenía una verja pequeña de madera, y en 1921 cuando se hizo la de concreto estaba allí pero mala; que como la gente entraba y se ensuciaba resolvieron hacer la de concreto alta; que el padre Delgado salió con la comi-

sión y los mandó donde el Alcalde a pedir el permiso y que si lo ha negado no dice la pura verdad "porque si somos católicos debemos decir la verdad"; que en pueblos como Hatillo esas peticiones se hacen verbalmente y no por escrito; que se recolectaron de seiscientos a setecientos pesos para la verja y faltó dinero que lo puso el padre Delgado, cree que de su dinero.

José Casanovas Marrero declaró que tenía 57 años y ha sido alcalde de Hatillo dos veces; que es católico; que fué alcalde en 1921 y conoce al demandado Ríos que ha tenido y tiene un kiosco en la esquina Norte de la plaza; que primero era de madera y ahora la asamblea le dió el solar para fabricar uno de concreto; que Ríos tenía el kiosco de madera desde 1918 y antes era de Clemente Ledesma que lo fabricó con permiso que le concedió la Asamblea Municipal, pero el terreno era del municipio toda la vida pues fué donado por Ruiz Miranda hace más de cien años; que él lo sabe desde que tenía uso de razón a los doce años; que el kiosco está en terrenos del municipio pues la Iglesia llega hasta el atrio y la separa la verja; que fuera de la verja está el kiosco hacia el Norte y después está el sardinet que separa el kiosco de la calle, que fué hecho por el municipio siendo Alcalde Fernando Velázquez; que además del kiosco hay árboles sembrados por el municipio en ese terreno desde el año 1925 y los empleados municipales los cuidan; que en tiempos de fiestas se ponían puestos en el terreno y pagaban a la comisión de fiestas y la Iglesia nunca tuvo nada que ver con esos terrenos; que cuando se fué a fabricar la verja por el padre Delgado lo visitó como alcalde una comisión compuesta de Miguel González y su padre (del declarante) y él les cedió cuatro metros a los lados Norte y Sur y lo hizo como católico y más que hubieran pedido, pues en Hatillo nadie va contra la Iglesia; que antes de cederles esos cuatro metros a cada lado formaban parte de las calles; que él no contó con la asamblea para esa concesión; que antes había una

verja de madera que determinaba el atrio anterior; que el atrio por el lado Norte, era angosto y tenía poco más del ancho de un hombre; que fuera de la verja de madera por todos los lados el municipio siempre poseyó el terreno.

José R. Lacomba se limitó a declarar que es agrimensor y reconoció un plano del pueblo de Hatillo hecho por él y que se admitió por la corte como un "sketch" de dicho pueblo.

Fernando Velázquez, de sesenta años de edad, declaró que fué Alcalde de Hatillo desde 1925 a 1928 y antes vivió allí desde que nació; que conoce al demandado Ríos que tenía un kiosco en la esquina de la Plaza y da sus colindancias con las calles y por el Sur con la verja del atrio de la Iglesia; que la verja nueva la hizo el padre Delgado con ayuda del pueblo; que Ríos tenía esa propiedad desde hace quince años en terrenos del municipio; que en el 1925 él mandó hacer el sardinet y el kiosco está dentro o sea entre la verja y la calle; que durante los sesenta años que lleva en Hatillo esos terrenos entre la verja y la calle han sido poseídos por el municipio; que la Iglesia nunca ha tenido que ver con ellos ni él para hacer el sardinet contó con la Iglesia; que él sembró los árboles que están allí, y se cuidaban por la administración; que él fué monaguillo ocho o diez años y lo que había era una pequeña verja de madera que apenas cabían dos personas al compás por los lados Sur y Norte, pues era de seis a ocho pies y fuera de eso la Iglesia no poseía nada más; que fuera de la verja siempre poseyó el municipio, y lo sabe porque nació allí y fué Juez de Paz, Tesorero Municipal y de Instrucción (además de Alcalde) y tenía que ver con eso; que esos terrenos fuera de la verja el municipio los daba para kioscos y picas cuando había fiestas; los daba el alcalde, siempre; que a la parte Sur hay otro kiosco de Manuel Martínez Circums, dentro del sardinet del municipio y fuera de la verja; que al Norte además del kiosco del demandado Ríos hay otro de Pedro Martínez Vargas que lo vendió luego

a un tal Morán. A repreguntas de la demandante declaró que él también fué por los campos recolectando dinero para la verja del padre Delgado; que él hizo el sardinet por ornato público, porque los vecinos arrimaban basura allí pegado al atrio y amarraban bestias y mandó a sembrar grama; que los kioscos se los llevaban después de las fiestas menos los dos principales; que lo que pagaban era para gastos de las fiestas y se le daba un tanto al cura y para fuegos y bailes.

Francisco Ríos, el codemandado, declaró que es vecino de Hatillo, católico y de 52 años .de edad y siempre ha vivido allí; que posee unos terrenos del municipio al Norte y fuera del atrio de la Iglesia y tiene un kiosco allí por el que paga contribuciones desde el año 1918. (Se admitieron como prueba 17 recibos de contribuciones sobre la propiedad (kiosco) pagadas por Ríos al Tesoro de Puerto Rico, correspondientes a los años 1927 a 1938 inclusive.) Que el primer kiosco suyo está al Sur de la Iglesia, entre la verja y la calle y el terreno allí es de 18 pies de ancho y pertenece al municipio; que él primero le arrendó el kiosco a Circums en el 1918; que después de seis años se pasó a otro kiosco viejo al Norte de la Iglesia que le compró a Clemente Ledesma y lo reconstruyó en el 1926; que tuvo que presentar planos y el municipio le concedió la licencia para usar el solar por ordenanza; que Pedro Martí también tuvo otro kiosco allí como diez años y él se lo compró en el 1929; que su kiosco tenía instalación sanitaria y tuvo que presentar planos a la sanidad; que el piso era de losetas; que para construir el kiosco de concreto tuvo que quitar el otro e hizo nuevos planos y la asamblea aprobó una ordenanza autorizándolo para la construcción pero ésta fué suspendida por orden de la corte.

Pablo J. Aguilar declaró ser de Hatillo, de 47 años de edad y Alcalde de dicho pueblo desde 1933 a 1937; que conoce la Iglesia y sus alrededores; que las calles no han sido siempre igual a como están hoy; que antes de la adminis-

tración del Alcalde Velázquez en 1925 la calle por el lado Norte llegaba hasta la verja de concreto de la Iglesia que hizo el padre Delgado; que era calle todo el espacio que hoy es calle y además ese encintado que hizo Velázquez achicando la calle; que antes de la verja de concreto la calle llegaba hasta otra verja más pequeña de madera que estaba más pegada a la pared de la Iglesia; que se usaba como calle transitando los viandantes por allí y se cedía para picas y máquinas de caballitos para las fiestas populares y religiosas; que esos terrenos los administraba el municipio y los controlaba como dueño; que cuando existía la verja de madera sólo había tres o cuatro pies hasta la pared de la Iglesia; que por el lado Sur la calle también llega hasta la verja de madera; que en 1922 se hizo la verja de concreto agrandando el atrio como en cuatro metros que eran del municipio, y después en 1925 Velázquez hizo el encitado de 18 pies; que en el encintado había y hay en la esquina un kiosco de la Sucesión Circums y en el Noroeste otro de Francisco Ríos y detrás de éste otro de Pedro Martí; que eran construcciones permanentes adheridas al suelo y tenían instalaciones de agua y luz; que Ríos pagaba patente municipal y contribuciones; que la Iglesia nunca discutió esos terrenos poseídos por el municipio; que por el frente de la Iglesia después de la verja hay una acera, después la calle y después la plaza; que la acera la hizo en 1934 siendo alcalde y la iglesia no tuvo nada que ver con ella; que por el saliente de la iglesia la calle tiene 30 pies y después de la calle está la casa que antes era de Miguel Arrieta. A repreguntas declaró que le ordenó al ingeniero Lacomba que hiciera el plano conteniendo la zona urbana de Hatillo y que se conocen como terrenos de la Iglesia los que están dentro de la verja porque eso antiguamente era calle, y repite lo declarado por él y por otros testigos de que las calles llegaban hasta la Iglesia; que los 1,102.50 m. c. que aparecen en el plano están dentro de la verja que circunda la iglesia actualmente.

Se admitió como prueba de los demandados copia de una ordenanza aprobada por el Municipio de Hatillo el 24 de mayo de 1938 concediéndole permiso a Francisco Ríos para construir una pequeña edificación de concreto de acuerdo con los planos presentados en un solar del municipio de once pies de frente por veinticinco de fondo, colindando por el Norte con la calle Norte de la Plaza, por el Sur con la iglesia, por el Este con un solar del Municipio y por el Oeste con la calle Oeste de la Plaza.

También se admitió como prueba un permiso revocable concedido el 23 de septiembre de 1923 por José Casanovas como Comisionado Municipal del Servicio Público, Policía y Prisiones de Hatillo a Clemente Ledesma, para instalar un kiosco portátil en la Calle Norte de la Plaza y sitio inmediato al Noroeste del atrio de la Iglesia, bajo ciertas condiciones y entre ellas las de que no podía vender el kiosco sin el consentimiento del Jefe Ejecutivo del Municipio, y éste se reservó el derecho de remover el kiosco de dicho sitio mediante notificación al dueño y si éste no lo hiciere se mandaría a quitar por cuenta del dueño. Se acompañó copia de un documento privado de compraventa por el cual Ríos le compró a Ledesma dicho kiosco el que fué aprobado por el Alcalde Casanovas.

También se admitió otro permiso revocable similar concedido al Sr. Manuel Circums el 20 de septiembre de 1923 para instalar un kiosco en la calle Sur de la Plaza.

Por último se admitió como prueba de los demandados una certificación expedida por el Registrador de la Propiedad de Arecibo el 28 de julio de 1938, conteniendo todas las inscripciones de la casa de Miguel Arrieta, que aparece mencionada en la sentencia del Tribunal Supremo como la colindancia Este de la Iglesia. De acuerdo con la primera inscripción de esta finca, hecha el 15 de marzo de 1890, dicha casa que, originalmente perteneció a José I. Corujo, se describe así:

"1a.—URBANA: Casa de altos y bajos, de maderas del país, cercada de tablas, cubierta de zinc, la cual mide quince metros cincuenta centímetros de frente, por quince metros de fondo, *sita en la parte de Saliente de la Plaza del Pueblo de Hatillo; que colinda por el Saliente y Norte con egidos de aquel pueblo; Sur con don Antonio Morales; y Poniente con la Plaza.* Enclava en un solar de diez y ocho metros de frente por cincuenta de fondo, *perteneciente al pueblo de Hatillo,* en el cual y con permiso de aquel Ayuntamiento se fabricó dicha casa, según se consigna en la certificación que se reseñará, en la cual se determinan las colindancias del solar del modo siguiente: Saliente don José Ignacio Corujo, *Norte, egidos del pueblo, Poniente la calle que da espalda a la Iglesia; y Sud con don Antonio Morales....*" (Itálicas nuestras.)

Continúa la inscripción primera diciendo:

"...El Ayuntamiento de Hatillo *posee desde hace el espacio de sesenta años en nombre propio y a título de dueño el solar descrito por ser parte de los terrenos que adquirió por donación hecha por don Agustín Ruiz y Miranda,* sin título escrito, y se hallan destinados a edificaciones para mejora de la población, *en parte de cuyo solar existe la casa también descrita perteneciente a don José Ignacio Corujo y Araes,* mayor de edad, soltero, propietario, vecino de Hatillo, acudió al Juzgado Municipal de su vecindad solicitando acreditar la posesión en que se halla de esta casa desde el año mil ochocientos ochenta y siete, que la adquirió por compra a don Manuel Echevarría y Santana, sin título escrito eficiente. Admitida la información ofrecida, *fué citado el colindante Morales y el Síndico del Ayuntamiento que nada expusieron en contra del derecho del Corujo* y declararon como testigos don Francisco Velázquez, sin otro apellido y don Alejandro Delgado y Esteva, vecinos propietarios de aquel término, quienes manifestaron les constaba de ciencia propia que el don José Ignacio Corujo, posee esta casa a nombre propio desde el tiempo y por el concepto indicado. De la certificación expedida por el Ayuntamiento de Hatillo, sellada y firmada por el Alcalde don Alfredo C. Alfonzo, Síndico don José Jesús Colón y Secretario don Eugenio Rubio, resulta: que don José Ignacio Corujo paga dos pesos cincuenta centavos de contribución por riqueza urbana, no pudiendo hacerse constar lo que contribuye por esta casa, porque al hacerse la derrama se tendría en cuenta el producto de otras que posee el citado Corujo. Comunicado el expediente al Ministerio Fiscal y habiendo opinado éste que en su concepto se habían guardado en el procedimiento las solemnidades legales, se dictó

auto de aprobación en veinte y cinco de abril del año próximo pasado. En su virtud examinado el Registro y no hallando en él ningún asiento contrario a lo relacionado inscribo la posesión de la finca de este número, *en cuanto al solar en favor del Ayuntamiento de Hatillo, y en cuanto al edificio en favor de don José Ignacio Corujo y Araes,* sin perjuicio de tercero que pueda tener mejor derecho a la propiedad.'' (Itálicas nuestras.)

Las inscripciones posteriores se refieren a la venta de la casa a distintas personas hasta que el 17 de julio del año 1897 se inscribió a favor de Miguel Arrieta. Esta fué toda la prueba del caso.

Surge de ella un conflicto evidente entre la situación de hechos reconocida por la sentencia dictada en rebeldía por este Tribunal Supremo en el año 1908, a base de las alegaciones contenidas en la demanda radicada en el año 1904 por la Iglesia Católica, y la situación de hechos existente en el año 1938 a los que se quiere hacer aplicable dicha sentencia. La corte inferior, mientras se celebraba el juicio y los demandados presentaban su prueba, se dió cuenta de esta situación y, al admitir dicha prueba hizo constar, correctamente a nuestro juicio, que la misma podría ''demostrar que la casa en construcción se encuentra fuera del límite reconocido por la sentencia del Tribunal Supremo'' y que oía la prueba ''para ver si surge algo que demuestre que la construcción está fuera de lo que le reconoce el Tribunal Supremo a la Iglesia Católica o sea en terreno municipal.''

Pero al resolver el caso en su fondo, sin embargo, llegó a la conclusión, errónea a nuestro juicio, de que los demandados ''tampoco presentaron prueba concreta para demostrar cualquier diferencia específica en los límites'' del solar. Copiemos de nuevo el párrafo de la opinión sobre este punto:

''Con respecto al segundo punto, la demandante presentó prueba específica en forma convincente, que fija el sitio de la edificación de Ríos, dentro del solar que le fué reconocido a la Iglesia por la sentencia del Tribunal Supremo. *No se alegó expresamente por los demandados que el sitio concedido a Ríos para edificar se encuentre fuera de los límites reconocidos por tal sentencia,* porque ellos no

reconocen el fallo como válido a pesar de ser cosa juzgada. *Tampoco presentaron prueba concreta para demostrar cualquier diferencia específica en los límites.* Se presentó un plano que ordenó hacer recientemente, el anterior Alcalde, sin fundarse en ningún título de propiedad ni tomar como base el fallo del Tribunal Supremo; y declararon testigos en forma imprecisa sobre aquellos terrenos que ellos suponen pertenecen al Municipio de Hatillo, por inferencias derivadas del tránsito o del uso del solar tolerado por la Iglesia, con actos en que asumía intervención el municipio." (Itálicas nuestras.)

Las declaraciones de los testigos de los demandados en cuanto a la situación de la Iglesia, su atrio, la verja de madera y las calles adyacentes, tal y como existían desde antes del año 1904 no fueron contradichas por la prueba de los demandantes y no pueden considerarse como imprecisas y fundadas en inferencias. Demostraron, a nuestro juicio, que la situación de la Iglesia de Hatillo, no en el año 1938 fecha en que se originó este pleito y que no puede por tanto servir de base para resolver el caso, sino con anterioridad al año 1904 sólo tenía un pequeño atrio circundado por una verja de madera que quedaba a pocos pies de la pared de la Iglesia, y que las calles alrededor de la Iglesia llegaban hasta ese mismo atrio; que las calles eran de tierra y de la Iglesia se salía a ellas; que ese terreno alrededor de la Iglesia se utilizaba para amarrar ganado y en épocas de fiestas para instalar puestos para vender refrescos, picas, caballitos, etc., con permiso del municipio el que cobraba diariamente por dichos permisos, aunque se atendía a las quejas de los párrocos de la Iglesia cuando se hacía mucho ruido que molestaba los servicios religiosos; que desde hace muchos años y por lo menos desde el año 1918 el municipio concedió permiso para la construcción de kioscos de madera en dichos terrenos, tanto a Ríos como a otros, los que tenían sus instalaciones sanitarias y su luz eléctrica; que en el año 1921 fué que se amplió el atrio de la Iglesia a ambos lados al construirse la verja de concreto para cuyo fin se hizo una recolecta popular y el Alcalde concedió permiso para que se construyera en-

sanchándola con dos o tres metros a cada lado; que el municipio fué quien construyó un encintado de concreto alrededor de dichos terrenos separándolos de las calles; que esas calles eran anchas y llegaban hasta el atrio con la antigua verja y luego fueron achicadas por el municipio y se separaron los terrenos que están dentro del encintado hasta la verja nueva pues antes llegaban hasta la Iglesia; que la verja vieja sólo quedaba a tres o cuatro pies de las paredes Norte y Sur de la Iglesia; que en el plano o "sketch" admitido como prueba dentro de la verja actual hay mil ciento dos metros con cincuenta centímetros (1102.50); y según declaró el testigo de los demandantes Quercadó, 1550 metros incluyendo 428.61 del edificio, son los que, según él, corresponden a la Iglesia; que el codemandado Ríos siempre ha pagado patente municipal por el kiosco y ha pagado además contribuciones sobre dicha propiedad al Tesorero de Puerto Rico desde el año 1927 a 1938; que de acuerdo con la certificación del Registrador de la Propiedad de Arecibo, la llamada casa de Arrieta está situada en solar del Municipio de Hatillo que colinda por el poniente (Oeste) con la calle que da a la espalda de la Iglesia y que el municipio desde sesenta años antes de la primera inscripción de dicha casa en 1890 o sea desde el año 1830 poseía dicho solar a título de dueño por ser parte de los terrenos que adquirió por donación hecha por Agustín Ruiz y Miranda. Toda esta prueba no tiende a demostrar meros actos de tolerancia por parte de la Iglesia sino verdaderos actos de dominio por parte del municipio sin intervención ni protesta alguna por parte de los demandantes.

Los demandantes, sin embargo, sostienen que de acuerdo con la sentencia de este Tribunal Supremo de 1908 tienen derecho a todo el terreno que quede incluído en las colindancias que en ella se hacen constar, no importa que, en la misma descripción que ellos hicieron de su finca en la demanda anterior, la limitaran a una superficie, inclusive el atrio de la Iglesia, de 428 metros 61 centímetros. Se fundan en la teo-

ría de que son los linderos los que individualizan y distinguen las superficies de toda finca, siendo la consignación de los linderos obligatoria y no así la extensión superficial, y citan el artículo 9 de la Ley Hipotecaria preceptivo de que en toda inscripción debe hacerse constar la naturaleza, situación y linderos de la finca pero que su medida superficial sólo si aparece de los títulos, no constituyendo por tanto circunstancia de necesaria e imprescindible constancia en el asiento. Al mismo efecto citan la Real Orden de 13 de agosto de 1893 conteniendo la instrucción general sobre la manera de redactar los documentos públicos sujetos a registros en las provincias de ultramar. Pero, para aplicar su teoría al caso de autos citan los comentarios de Scaevola y Manresa al artículo 1471 del Código Civil de España equivalente al artículo 1360 del nuestro (ed. 1930) que en su primer párrafo dispone:

"Artículo 1360.—En la venta de un inmueble, hecha por precio alzado y no a razón de un tanto por unidad de medida o número, no tendrá lugar el aumento o disminución del mismo, aunque resulte mayor o menor cabida o número de los expresados en el contrato."

Este artículo forma parte del Libro Cuarto del Código Civil que trata de las obligaciones y contratos y especialmente sus Título IV y Capítulo IV que tratan sobre el contrato de compra y venta y de las obligaciones del vendedor, respectivamente. Nada hay en el caso de autos que pueda hacer aplicable dicho artículo, pues no se trata de un caso de compraventa de una finca por precio alzado. El Municipio de Hatillo nada le vendió a la Iglesia por precio alzado para que los demandantes puedan ahora reclamar la aplicción de la doctrina reconocida por dicho precepto legal. Las conclusiones a que llegan los demandantes en su alegato, después de citar la descripción de la Iglesia, según aparece de la demanda y la sentencia anterior, son las siguientes:

"*Primero*.—Se reclamó en la demanda y fué adjudicado, cuanto se comprende en esos linderos. Desde la plaza y sus calles Norte y

Sur, hasta la casa de don Miguel Arrieta. Nada ha quedado excluído entre el templo y la plaza principal, entre aquél y la calle Sur, entre el mismo templo y la calle Norte.

"*Segunda.*—Quien haya construído dentro de ese perímetro adquirió de mala fe, en oposición al título declarativo de dominio que significa la sentencia del Tribunal Supremo de Puerto Rico.

"*Tercera.*—Demostrado el título declarativo de dominio, correspondía a los demandados, como muy bien falló el Honorable Juez de la Corte de Distrito de Arecibo, demostrar que la propiedad de ellos no estaba incluída en el perímetro reconocido como límite del dominio reconocido a la Iglesia Católica, Apostólica y Romana."

No podemos estar conformes. Ya hemos dicho que la prueba no contradicha de los demandados ha demostrado que, aceptando como buenas y ciertas las colindancias o linderos adjudicados por la sentencia anterior, y así lo hacemos, los mismos no tienen ni pueden tener el alcance que pretenden darles los demandantes. Las calles Norte y Sud de la Plaza, que eran las colindancias Norte y Sur de la Iglesia, llegaban hasta y terminaban en la misma verja de madera que tenía la Iglesia y así mismo la colindancia Oeste o sea la Plaza Principal terminaba en la calle que la separaba de la plaza. En cuanto a la colindancia Este que se dice era con casa de don Miguel Arrieta, la prueba ha demostrado también que esa casa está en solar del municipio y que colinda desde el año 1830 por el Oeste con la calle que da a la parte posterior de la Iglesia.

No podemos convenir con los demandantes que, por lo que dichas colindancias dijeran tienen derecho a que en ellas se incluyan una calle del Municipio de Hatillo, todo el terreno dentro del encintado y la acera que da frente a la plaza, cuando la interpretación lógica y razonable es que el límite de las colindancias sean las calles mismas, no como existen hoy, sino como existían en el año 1904 cuando se inició el pleito anterior. Es más, de acuerdo con la declaración del Padre Delgado la verja de concreto se hizo por el mismo sitio donde existía desde tiempos de España otra verja de

madera lo que indica que de la propia prueba de las deman-
dantes dicha verja era la que limitaba el atrio de la Iglesia.

Es cierto, como dicen las demandantes, que el dueño tiene
derecho a cercar parte de su finca si desea, sin que eso impli-
que que renuncia al resto de su propiedad, pero es que los
hechos del caso demuestran que los demandantes nunca tuvie-
ron derecho, a virtud de la sentencia dictada por este Tribu-
nal Supremo, a lo que pretenden reclamar por esta acción.
Por el contrario, la prueba demuestra que están en posesión
y disfrutando de un solar de por lo menos 1,102.50 metros
cuadrados, mucho mayor que el de 428.61 metros cuadrados
que, incluyendo el atrio, se le reconoció por dicha sentencia
y que fué por donación del Municipio de Hatillo, bien o mal
hecha, que dicho aumento se hizo al construir la nueva verja
de concreto en el año 1921.

Somos de opinión que el codemandado Francisco Ríos y
las otras personas que han construído kioscos en el terreno
que queda fuera de los límites de la verja de las demandan-
tes no lo han hecho de mala fe o por tolerancia de las de-
mandantes, sino con permiso del Municipio de Hatillo que
demostró que dicho terreno no estaba incluído en los límites
que la sentencia anterior reconoció a las demandantes.

Dicha sentencia anterior no tenía el carácter de cosa
juzgada en relación con los hechos de este caso, según sos-
tuvo la corte inferior. La cuestión debatida en el caso que
resolvemos no estaba ni podía estar comprendida en el ante-
rior litigio porque, como hemos repetido tantas veces, la si-
tuación de hechos alegada por la Iglesia demandante en aquel
caso y la situación de hechos existente en el año 1938, cuando
quiso darle efecto a aquella sentencia, y es significativo el
tiempo transcurrido, eran distintos. Alegó entonces y obtuvo
sentencia en rebeldía contra el Municipio de Hatillo, a base
de una demanda en la que alegaba tener derecho a una Igle-
sia, incluso su atrio de 428.61 metros cuadrados dentro de
ciertas colindancias y ahora los demandados han demostrado

que ciertos terrenos del municipio no están comprendidos dentro de los terrenos que dicha sentencia reconoció a las demandantes. Véase *Orama et al.* v. *Oyanguren,* 19 D.P.R. 828, donde se resolvió que la sentencia dictada en una acción es conclusiva en cuanto a los hechos alegados y debatidos en el pleito y no produce el efecto de cosa juzgada en otro pleito entre las mismas partes y en una acción de la misma naturaleza, fundado en hechos distintos que no existían cuando entabló su primera acción.

Somos de opinión que la corte inferior cometió manifiesto error en la apreciación de la prueba en este caso y que como consecuencia concedió a las demandantes más de lo que le reconoció la sentencia en el caso anterior y que *procede, por tanto, la revocación de la sentencia apelada y dictarse la que debió dictar dicha corte, declarando sin lugar la demanda, con costas sin que éstas incluyan honorarios de abogado.*