EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Querella |
|---|---|
| Efraím Ramírez Ramírez | 2000 TSPR 90 |

Número del Caso: CP-1997-0004

Fecha: 26/mayo/2000

Oficina del Procurador General:

> Lcda. Edna E. Rodríguez Benítez
> Procuradora General Auxiliar

Abogado de Efraím Ramírez Ramírez:

> Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO**Error! Bookmark not defined.**

In Re:

Efraím Ramírez Ramírez

CP-97-4
AB-94-96
AB-98-201
AB-99-93

PER CURIAM

San Juan, Puerto Rico a 26 de mayo de 2000

Se presentan ante nuestra consideración cuatro querellas contra el licenciado Efraím Ramírez, querellado de epígrafe, que en su debido momento fueron remitidas al Hon. Procurador General con la encomienda de investigar los asuntos en ellas expuestos y rendir los informes correspondientes.

La primera petición se canaliza a través de la Jueza, Hon. Emilia M. Román Nevárez, (querella AB-94-96 y que luego también desembocó en la querella CP-97-4) y fue promovida por la Lcda. Damaris Mangual, abogada contraria del licenciado Ramírez en el caso CAC-86-0827, sobre Partición de Herencia, a quien éste acusó infundadamente,

mediante diversas mociones, de una serie de actos impropios. La licenciada Mangual solicitó se presentara querella contra el licenciado Ramírez para que se evaluara su capacidad mental para ejercer la profesión de abogado, como una medida de protección social, por lo que el 16 de agosto de 1994 la Jueza Román Nevárez emitió Resolución y Orden remitiéndonos dicho asunto. A esta primera querella se han unido otras quejas que, por estar íntimamente relacionadas, deben ser evaluadas conjuntamente con los hechos que provocan la presente.

Las resoluciones que dictara el Juez, Hon. Ettienne Badillo Anazagasty, en 7 de diciembre de 1995 y 13 de marzo de 1996, en el caso CAC-91-1376, se fundamentan en una petición presentada por los abogados Félix Zeno Gloro y Carlos Vega Pérez, solicitando la imposición de sanciones al querellado por la forma contumaz de hacer alegaciones de fraude, sin presentar evidencia que las sostengan, y tratar de relitigar un caso en el cual había recaído sentencia final, ya firme.

Estamos evaluando, además, diversos escritos del querellado elevados por el Juez, Hon. Heriberto Sepúlveda Santiago, donde el querellado, sin base alguna, imputa al Juez Sepúlveda Santiago y a la Jueza Román Nevárez una serie de actos ilegales.

La querella AB-98-201 surge de señalamientos que hiciera el Juez, Hon. Miguel J. Fabré, el cual, preocupado por los derechos del representado del licenciado Ramírez en el caso CAC-96-0485 sobre Partición de Herencia, debido al constante incumplimiento de éste con las órdenes del tribunal, paralizó los procedimientos del litigio ante su consideración y elevó una petición a este Tribunal para que evalúe la conducta del licenciado Ramírez. El Procurador General rindió un primer informe el 3 de marzo de 1999, en el cual concluye que los múltiples incumplimientos del licenciado Ramírez en este caso son atribuibles a su precario estado de salud. No obstante, recomienda que si el licenciado Ramírez no reconoce las limitaciones que dicho estado le ocasiona para ejercer cabal y adecuadamente las funciones y deberes propios de la práctica de su profesión, renunciando a la representación legal de la

parte demandada, el Tribunal Supremo debe iniciar un procedimiento disciplinario por violación al Canon 18 de Ética Profesional.

La querella AB-1999-93, a su vez, surge de la resolución que eleva el Juez, Hon. José E. Loubriel Vázquez, el 16 de junio de 1999, en atención a una "Moción solicitando orden protectora y petición para que se remitan los autos al Honorable Tribunal Supremo a los fines de que se inicie un procedimiento para determinar la capacidad mental del licenciado Efraím Ramírez o la evaluación de su conducta profesional", presentada por la parte demandada en dicho caso. La resolución plantea que en el expediente existe un historial de señalamientos serios y sin fundamentos de parte del querellado de epígrafe hacia los funcionarios del tribunal y las partes. El Procurador General recomendó, en Moción Informativa de 8 de octubre de 1999, que dado que los señalamientos que hace el Juez Loubriel Vázquez sobre la conducta profesional del licenciado Ramírez son idénticos o similares a aquellos señalamientos que hicieron los Jueces, Honorables Heriberto Sepúlveda Santiago, Ettiene Badillo Anazagasty y la Jueza, Hon. Emilia Román Nevárez, no se debería iniciar otro procedimiento de determinación de incapacidad mental, por razón de que el querellado de epígrafe ya fue evaluado, por lo que sugiere que se consolide con el caso CP-97-4. Así lo hemos hecho.

I

El licenciado Efraím Ramírez fue admitido al ejercicio de la abogacía el 19 de julio de 1938 y al ejercicio del notariado el 28 de septiembre de 1938. Nació el 13 de enero de 1911.

Los hechos que provocan la primera querella se remontan al 15 de octubre de 1990, cuando se dictó sentencia por estipulación en el caso Eleonor Sánchez Álvarez v. Víctor Sánchez Cancel, civil número CAC-86-0827, sobre partición de bienes hereditarios. La parte demandante estaba representada por el Lcdo. Rafael Cardona Campos, los demandados estaban representados por la Lcda. Damaris Mangual Vélez y la parte interventora por el Lcdo. Domingo Emanuelli.

El 7 de mayo de 1993, la demandante Eleonor Sánchez compareció por derecho propio al tribunal pidiendo que se le ordenara al Lcdo. Cardona Campos, su propio abogado, entregarle ciertos documentos. Dicha gestión culminó en la renuncia del licenciado Cardona y en la eventual sustitución por el licenciado Ramírez.

Desde entonces, éste ha hecho varias y repetidas imputaciones, sin fundamento alguno, a los diferentes jueces y abogados que han actuado en distintas etapas del litigio.

Así, el 16 de noviembre de 1993, el licenciado Ramírez presentó una moción en la que imputaba al Juez Sepúlveda Santiago haberlo maltratado de palabra y de difamarlo durante la celebración de una vista. Solicitó al Tribunal que declarara nulo el dictamen resultante de tal vista y ordenara la inhibición del Juez Sepúlveda.

El 9 de julio de 1994, el querellado suscribió una "Moción para que fijen responsabilidades, se enmiende la estipulación y se enmiende la sentencia dictada" el 15 de octubre de 1990. En ella, entre otras cosas, hace las siguientes imputaciones: Que los demandantes al empezar no tuvieron la suerte de una buena representación; que el segundo abogado de los demandantes "empezó por no pedir al administrador que hiciera algo o renunciara", "prestó servicios a algunos herederos, contrario al interés de los demandantes", e "ignoró actuaciones impropias de la abogada de los interventores". Imputó también a la "juez de entonces" (Hon. Edna Abruña) favorecer al licenciado Cardona. Acusó a la licenciada Mangual de retirar sin permiso dos mil dólares ($2,000.00) para pagar sus honorarios y radicar "erróneamente unas planillas"[1].

En vista de tales imputaciones y las repetidas solicitudes de inhibición a cada uno de los jueces que participaron en el caso hechas por el Lcdo. Ramírez sin otro fundamento que haber fallado en contra de su cliente, así como otras imputaciones sin fundamento a los demás

---

[1] Surge del expediente que ninguno de los abogados había cobrado honorarios hasta el momento y que los únicos fondos retirados, por orden del Tribunal, se utilizaron para pagar contribuciones y adelantar unos fondos a doña Eleonor Sánchez, representada del licenciado Ramírez.

abogados en el caso, la licenciada Mangual solicitó del Tribunal de Instancia que elevara tales incidentes a la consideración de este Foro, a los fines de que ordenásemos la evaluación psicológica de dicho abogado para determinar si éste sufría de alguna incapacidad mental, "como lo sería la demencia senil". Así se dio inicio al proceso AB-94-96, a cual nos referimos al comienzo de esta opinión.

El 23 de agosto de 1994, el licenciado Ramírez insistió nuevamente en que se enmendara la estipulación que dio base a la sentencia de 15 de octubre de 1990. El Tribunal dictó resolución el 30 de agosto, reiterando la finalidad y firmeza de dicha sentencia, limitando los trámites pendientes a la venta de ciertas propiedades del caudal para poder efectuar la partición final. Le requirió al licenciado Ramírez unas gestiones específicas en cuanto a ciertos herederos, las cuales ya le habían sido requeridas anteriormente. No hay constancia en el expediente de que estas gestiones se hicieran. Lo próximo que surge del expediente es una nueva "Moción sobre violaciones y solicitud de nulidad de estipulación y de sentencia" de 20 de enero de 1995, suscrita por licenciado Ramírez y juramentada por la demandante Sánchez. Por lo ilustrativo hemos de reproducir íntegros algunos de sus párrafos:

> "Lo de demencia senil es una imputación calumniosa altamente irrespetuosa y difamatoria, por lo que este abogado suscribiente ha sufrido daños físicos y mentales y basándose en los documentos que existen en el expediente de este caso que han sido notificados a los otros abogados, entiende que se le han causado sufrimientos que estima en $100,000 por sentencia sumaria la cual solicita por la presente. McCrillis vs. Autoridad Navieras CA89-6 MJCA vs. Julio E. CA 89-99 [...]

> Los demandantes en este caso se querellan de que dicha licenciada [Mangual] les ha hecho pagar al Departamento de Hacienda, por contribución de caudal hereditario, la suma de $80,000.00 estando este caudal exento de pago. Solicitan sentencia sumaria y que se condene a dicha abogada al pago de $100,000.00 por la cual sentencia sumaria, basada en los documentos que existen en el expediente de este caso, se les indemnice los sufrimientos físicos y mentales que los demandantes han sufrido. [...]

> Las dilaciones del caso del epígrafe que nos atribuye la licenciada; su torpeza la hace olvidar que en dicho caso la que lo ha dictado es ella. Se empezó en 1986 y por su impericia y falta de experiencia, que la hacen ignorar las leyes, es que el caso se ha dilatado como demostramos mas adelante." [...]

Reitera, además, sus quejas sobre la forma en que el caudal ha sido administrado y vuelve a insistir en que la estipulación es "totalmente nula" como también es nula la sentencia que aprobó la estipulación, todo esto sin aducir fundamentos en apoyo de sus alegaciones. El Tribunal denegó implícitamente la moción, remitiéndose a sus anteriores resoluciones donde elevaba la queja, y a aquella que establecía que la sentencia era final y firme[2].

Coetáneamente sucedían los siguientes hechos que hemos de evaluar con la presente querella:

El caso civil CAC-91-1376 se había iniciado el 27 junio de 1991, con la presentación de una demanda en el antiguo Tribunal Superior, Sala de Arecibo, siendo otro el abogado que representaba a la parte demandante. El licenciado Ramírez asumió la representación de la demandante el 6 de noviembre de 1992, cuando ya se había hecho todo el descubrimiento de prueba, se había celebrado la conferencia con antelación al juicio y el caso estaba señalado para juicio. El mismo trataba de una reclamación de la demandante, doña Virginia Mercado, contra la Cooperativa de Ahorro y Crédito de Arecibo para que ésta le pagara unas sumas que alegadamente le correspondían como beneficiaria designada en las tarjetas testamentarias de don Angel Alvarez, socio de dicha cooperativa, que había fallecido en 1970.

El 20 de mayo de 1993, el licenciado Ramírez presentó, sin autorización del Tribunal, una segunda demanda enmendada. Pretendía litigar un asunto completamente ajeno al pleito de las tarjetas testamentarias. Esto es, solicitaba que se reconociera como hijos legítimos de don Ángel Álvarez a los dos hijos habidos de la unión de la señora Mercado y el señor Alvarez, (quienes eran demandados en la primera demanda) y se les entregara su participación en la totalidad del caudal

---

[2] Hay que hacer notar que el licenciado Ramírez en ningún momento solicitó reconsideración a estas decisiones adversas ni recurrió de las mismas.

hereditario del causante, que según se alegaba, se lo habían repartido ilegalmente sus cuatro medios hermanos.

El 28 de diciembre de 1993, el licenciado Ramírez solicitó mediante escrito al efecto, que se aceptara la demanda enmendada, lo que fue denegado mediante orden de 21 de enero de 1994. El 2 de febrero siguiente, el querellado presentó un escrito reiterando la procedencia de su demanda enmendada. El 15 de febrero, la Jueza, Hon. Olivette Sagebién reiteró que no se permitiría una enmienda encaminada a incluir un litigio de división de herencia dentro del caso de la Cooperativa, señalando, además, que había intereses en conflicto entre Virginia Mercado y sus hijos que impedían que fueran representados a la misma vez por el licenciado Ramírez. El 13 de junio de 1994, el antiguo Tribunal Superior, Sala de Arecibo, dictó resolución en la que concedía diez (10) días a Virginia Mercado para que acreditara con prueba específica la fecha y manera en que pudo haber interrumpido el plazo prescriptivo con reclamaciones extrajudiciales hacia la Cooperativa, ya que habían pasado más de 15 años desde la muerte del causante al momento de la reclamación judicial. Al no recibir respuesta a dicho requerimiento, el Tribunal dictó sentencia desestimando la demanda el 9 de agosto de 1994, archivándose en autos copia de la notificación a las partes el 15 de agosto de ese año.

El licenciado Ramírez presentó una moción de reconsideración el 24 de agosto, a nombre de doña Virginia Mercado y de Tomás Mercado Álvarez, en la cual significativamente, no argumenta lo intimado acerca de si se había interrumpido o no el plazo prescriptivo extrajudialmente, sino que vuelve a insistir en que la "carta testamentaria" de Virginia Mercado fue usurpada por cuatro hijos del causante. Alega, además, que Tomás Alvarez tenía derecho a una participación hereditaria de los beneficios de su padre en la Cooperativa y que por ser menor al momento de la muerte del padre contra él no corrió la prescripción.[3] Argumentó nuevamente que los

---

[3] Nótese que en la demanda enmendada Virginia Mercado reclama **todos** los beneficios del causante en la Cooperativa y en este momento Tomás

otros medios hermanos de Alvarez se habían apropiado ilegalmente de **otros bienes** del caudal relicto de su padre y que Álvarez tenía derecho a recobrar lo que le correspondía. Esta solicitud de reconsideración fue denegada mediante resolución de 20 de septiembre de 1994, por el fundamento de que no se había demostrado que se hubiese interrumpido el término prescriptivo en la acción incoada por Virginia Mercado. No obstante, señaló el Tribunal, que esa decisión no disponía de los derechos hereditarios de Tomás Álvarez y que para vindicar tales derechos se debía iniciar el correspondiente pleito.

El querellado, en escrito de 17 de octubre de 1994, volvió a pedir que se dejara sin efecto la sentencia y se aceptara la demanda enmendada; el 19 de noviembre presentó otro escrito donde esgrimía la teoría de que existía en este caso "estoppel por fraude" pero no explicaba en qué consistía el fraude  ni cómo podía ser aplicada esa teoría contra la Cooperativa y no contra los autores del fraude. Ambas mociones fueron desestimadas por el Tribunal (Jueza Olivette Sagebién) el 13 de febrero de 1995;  una serie de mociones posteriores, (30 de septiembre de 1995 y 21 de noviembre de 1995), fueron denegadas por el Juez, Hon. Ettiene Badillo Anazagasty.

Aduce el Juez Badillo Anazagasty, en fundamentada resolución de 7 de diciembre de 1995, haber recibido mociones de réplica de los abogados de los demandados, Lcdo. Félix Zeno Gloro y Lcdo. Carlos Vega Pérez, solicitando sanciones contra el licenciado Ramírez por la forma contumaz de hacer continuas alegaciones de fraude a sus representados sin presentar la más mínima prueba con qué sustentar las mismas y de insistir una y otra vez en relitigar una controversia firmemente resuelta y que nunca fue apelada. Dicho magistrado aseveró conocer de la querella AB-94-96 en contra del licenciado Ramírez por lo que envió copia de dicha resolución al Procurador General, para ser unida al expediente.

---

Álvarez reclama su participación hereditaria, teorías entre sí irreconciliables, que hace conflictivo el que ambos sean representados por el mismo abogado.

En escrito fechado 16 de enero de 1996, titulado "Solicitud de nulidad de resolución" sostiene el querellado que la Resolución de 7 de diciembre de 1995, suscrita por el Juez Badillo, incurre en diez errores, por lo que pide que "se anule". Asevera, además, que aunque la Resolución está firmada por el mencionado juez, él sabe que el verdadero autor de dicha resolución no es el Juez Badillo. Que la información sobre la querella la dio el Juez Sepúlveda, quien lo había acusado de estar incapacitado. Este último escrito también fue enviado mediante resolución del Juez Badillo, al Procurador General para que investigara si las serias imputaciones del querellado podrían haber violado la Regla 9 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.9, sobre "[l]as firmas en los escritos", constituyéndose el delito de perjurio.[4]

II

La Oficina del Procurador General condujo su investigación inicial y rindió su primer informe el 3 de marzo de 1995. Expresó en el mismo que el comportamiento del licenciado Ramírez para con sus compañeros abogados y jueces arrojaba dudas sobre su capacidad mental por lo que recomendó se iniciara un procedimiento bajo la entonces Regla 14 del Reglamento de este Tribunal sobre Incapacidad Mental de Abogados, ahora Regla 15, 4 L.P.R.A. Ap.XXI-A, R.15.

Mediante Resolución de 12 de mayo de 1995, dispusimos que se iniciaran los trámites bajo dicha Regla y se nombró como Comisionado Especial al Lcdo. Flavio Cumpiano Villamor para que recibiera la prueba a dichos efectos.

---

[4] El expediente permaneció inactivo por varios meses hasta que el 3 de junio de 1996 el licenciado Ramírez informa al Tribunal haber enviado un requerimiento de admisiones a la parte demandada, sin especificar a cuál de los demandados se le envió. El 24 de julio el licenciado Ramírez presentó una solicitud de sentencia sumaria a nombre de la demandante, que no satisface los requisitos de la ley y la jurisprudencia para que pueda ser tomada como tal. Repetía en ambas las mismas alegaciones sin fundamentar. Todo esto en un caso en el que ya se había dictado una sentencia desde el 9 de agosto de 1994 y la cual era final y firme.

El 12 de febrero de 1996, el Comisionado Cumpiano rindió su informe del cual surge que habiendo sido examinado el licenciado Ramírez por un panel de tres (3) psiquiatras, éstos concluyeron unánimemente que no había evidencia de condición mental alguna en el querellado que pudiese afectar su capacidad para representar a sus cliente de forma competente y adecuada o le impidiese mantener el patrón de conducta profesional que debe observar todo abogado.

Dada la evidencia pericial descartando la posible falta de capacidad mental del querellado, sugirió el Comisionado que los hechos ante él considerados debían ser evaluados dentro de otro procedimiento disciplinario. Este Tribunal, mediante resolución de 23 de agosto de 1996, acogió las determinaciones del Comisionado, y ordenó el archivo del trámite sobre incapacidad bajo la Regla 14. Nuevamente remitimos el caso al Procurador General para que éste ampliara su informe anterior. El 24 de marzo de 1997, el señor Procurador rindió un informe complementario y el siguiente 3 de abril, el licenciado Ramírez presentó un escrito titulado "Moción para corregir errores de dos informes", en el que cuestionaba los informes del Procurador General y solicitaba, como único remedio, que este Tribunal "admita las correcciones y sentencie a los que nos han calumniado, según exige la justicia". Luego de considerar ambos informes ordenamos al Procurador General presentar las querellas correspondientes.

El 18 de junio de 1997, el señor Procurador General presentó la querella CP-97-4, en la cual se imputó al querellado sendas violaciones a los Canones 2, 9, 12, 15, 18, 27, 29 y 35 de los de Ética Profesional, 4 L.P.R.A. Ap. IX y por violar el criterio general de los deberes del abogado para con los tribunales y para con sus compañeros y su profesión.

El 3 de julio de 1997, el licenciado Ramírez contestó la querella y solicitó que la misma fuera desestimada. El 5 de septiembre de 1997, este Tribunal designó al Lcdo. Ángel Hermida como Comisionado Especial y tres meses más tarde el querellado presentó otra contestación enmendada.

Asevera el Comisionado Hermida haber tenido gran dificultad en interpretar dichas contestaciones. El querellado no contesta en forma sistemática las diferentes alegaciones de hechos de la querella sino que escoge algunas para discutirlas de forma bastante peculiar, "se va por la tangente", discute asuntos distintos a los planteados y en algunas ocasiones los planteamientos "rayan en la incoherencia".

Se celebró vista en su fondo el 12 de noviembre de 1998, luego de una tardanza de 14 meses desde la fecha del nombramiento del Comisionado. La dilación de dicha vista obedeció a varias razones, entre éstas, el que varias de las vistas y conferencias tuvieron que ser suspendidas por motivos de salud del querellado. A la vez, éste interpuso un recurso de *mandamus* contra el Comisionado reclamando la jurisdicción original de este Tribunal, para que revisáramos la decisión del Comisionado denegando el archivo de la querella en su contra.[5] Además, el 6 de agosto de 1998, el querellado presentó un escrito titulado "Solicitud de Inhibición" donde nos solicitaba ordenar la inhibición del Comisionado[6]. En esa moción el querellado destaca su desacuerdo con algunas de las decisiones del Comisionado y le imputa prejuicio a favor de la Procuradora General Auxiliar.

Durante la vista, tanto la Procuradora General Auxiliar, como el querellado sometieron su caso sin presentar testigos. El querellado insistió en representarse a sí mismo a pesar de las advertencias del Comisionado de que debía procurar representación legal. El Comisionado manifestó en su informe que durante todo el proceso de presentar sus documentos el licenciado Ramírez parecía no comprender bien qué era lo que estaba pasando en ese momento. Menciona como ejemplos, que el querellado ofreció en evidencia un requerimiento de admisiones que éste

---

[5] Es necesario enfatizar la improcedencia del recurso incoado. No procede el recurso de *mandamus* para obtener la revisión de una decisión ya tomada. Pueblo v. La Costa, 59 D.P.R. 199 (1941); Purcell v. Pons 129 D.P.R. 711 (1992).

[6] Tanto el *mandamus* como la recusación fueron declaradas sin lugar, de plano, por este Tribunal.

había dirigido dentro del caso a la Procuradora, y que el Comisionado había determinado que dicha funcionaria no tenía que contestar[7]. Al ser preguntado sobre la pertinencia de dicho documento y por qué lo ofrecía en evidencia, el querellado contestó que no recordaba por qué lo estaba ofreciendo. En otro momento el querellado ofreció como exhibit un pedazo de papel rayado, escrito a mano. Cuando se le pidió que explicara de qué se trataba dijo que allí había copiado una cita de una opinión del Tribunal Supremo la cual quería fuera tomada en cuenta por el Comisionado.[8]

Concluye el Comisionado que tanto actuando como abogado en las diferentes conferencias y vistas como en sus escritos, el querellado demuestra una deficiente capacidad e inadecuado y pobre desempeño, una seria dificultad para comprender los asuntos en controversia y un inadecuado manejo de los mecanismos procesales de nuestro sistema de derecho. En su defensa durante la vista, el querellado ofreció en evidencia exhibits y argumentos que tenían que ver con los casos de sus clientes, sin entender que *el issue* no era los méritos de las reclamaciones de sus clientes sino si él había actuado de acuerdo a los postulados de nuestro Código de Etica Profesional ante los tribunales y en relación a sus compañeros de profesión.

### III

Luego de examinados los varios expedientes ante nos, reveladores de la ejecutoria del querellado, tanto en la defensa de sus clientes como

---

[7] Más adelante nos pronunciaremos acerca del uso que el querellado da a este método de descubrimiento de prueba y a otros mecanismos procesales de nuestro ordenamiento. Este requerimiento en particular, pretendía que la Procuradora admitiera, entre otras cosas, que "en su blusa utilizaba una insignia de un partido político con la intención de tratar de llevar un mensaje al Comisionado Especial, a sabiendas de que es un delito influir sobre los jueces".

[8] Sobre este particular declara el Comisionado que "[s]e trata sin duda de una forma muy particular de citar jurisprudencia, algo que normalmente no se hace ofreciendo un documento en evidencia, sino mediante argumento oral, o presentando por escrito un memorando de derecho".

representándose a sí mismo, tenemos que coincidir con las conclusiones del Comisionado en cuanto al deficiente desempeño profesional, la pobre calidad de sus escritos, el ineficaz manejo de los recursos procesales disponibles en nuestra jurisdicción y el abuso de algunos de éstos, situación que provoca que los derechos sustantivos de sus representados puedan verse lesionados.

Así, vemos por ejemplo, el improcedente uso que el querellado da a recursos como el *mandamus*, la sentencia sumaria, la recusación de jueces, la solicitud de desaforo para compañeros abogados, el abuso de los mecanismos de descubrimiento de prueba, el uso ineficiente y abusivo de las acciones judiciales y las reglas de procedimientos disponibles, el no sostener sus argumentos con fundamentos y, en demasiadas ocasiones, la total carencia de coherencia y de lógica en sus planteamientos, todo esto en detrimento de los derechos de sus representados.

Esta conducta constituye una violación al Canon 2 de Ética Profesional que obliga al abogado a mantener y a lograr un alto grado de excelencia y competencia en su profesión con el fin de viabilizar una representación legal adecuada para toda persona que contrate sus servicios como abogado. Véase además, In Re: Díaz Alonso, 115 D.P.R. 755 (1984).

El Canon 18 también impone al abogado la obligación de defender los intereses del cliente diligentemente desplegando en cada caso su más profundo saber y habilidad y actuando de la forma en que la profesión jurídica en general estima adecuada y responsable. Además, prohíbe al abogado asumir una representación profesional cuando está consciente de que no puede prepararse adecuadamente, sin que ello apareje gastos o demoras irrazonables al cliente o a la administración de la justicia.

IV

Es ostensible la tendencia del querellado a utilizar lenguaje altamente impropio, ofensivo y criticar severa y mordazmente a los abogados a los cuales se enfrenta, convirtiendo el litigio en una innecesaria disputa personal, violando así los canones 15, 29 y 35 de

Ética Profesional. Véase además, In Re: Clavell Ruiz, 131 D.P.R. 500 (1992); In Re: Córdova González, 125 D.P.R. 555 (1990).

En el caso CAC-86-0827, criticó las actuaciones, tanto del abogado a quien él sustituyó, como a la Lcda. Damaris Mangual, a quien ofendió, y acusó de fraude repetidamente. En escrito que presentara ante nosotros el 25 de abril de 1995, ya comenzado el procedimiento disciplinario que nos ocupa, el licenciado Ramírez la acusó de mentir en repetidas ocasiones hasta que manifiesta que "se graduó con su mentira y calumnia mayor [...]". En el inciso sexto (6), que por su pertinencia vale la pena copiar íntegro, el querellado declara que "[e]l radicar un caso de información de dominio sin permiso y vicioso, el difamar y mentir repetidamente, y su desconocimiento del procedimiento civil, todo como una depravada moral. Esta abogada es indigna de la abogacía." (Énfasis en el original.) En varios escritos se refiere a ésta como "la verdadera delincuente" y "abogada traumática".

Ya instado el procedimiento disciplinario, en sus mociones ante nos, hizo comentarios ofensivos acerca de la Procuradora General, de la que dice que tiene poca preparación legal y falta de experiencia y a la que acusa, junto al licenciado Zeno Gloro, que "están de volver a estudiar leyes."

Además, utilizó lenguaje ofensivo en contra del abogado Rosario Maysonet en su "[r]éplica a los otros extremos y solicitud de sentencia sumaria" de 18 de septiembre de 1998, al manifestar que éste "demuestra lo poco que sabe de procedimiento civil". Con estas actuaciones el querellado se coloca fuera del Canon 15 que promulga que la conducta del abogado para con los testigos y litigantes adversarios debe ser de respeto y consideración. Dicho canon proscribe al abogado actuar inspirado en animosidad o por prejuicios de su cliente hacia las otras partes del litigio. Prohíbe, además, la utilización de los procedimientos legales de forma irrazonable con el fin de hostigar a la parte contraria.

El licenciado Ramírez ha contravenido asimismo, el criterio general de los deberes del abogado para con sus compañeros y para con su profesión, que obligan a preservar el honor y la dignidad de la profesión y la buena relación entre compañeros, observando siempre una actitud respetuosa, sincera, honrada y de cordialidad y cooperación profesional, así como el Canon 29 que promulga claramente que son los clientes y no los abogados los litigantes, por lo que cualquier rencor entre los clientes no debe afectar la conducta de los abogados entre sí ni las relaciones hacia el litigante contrario. Cada abogado tiene el deber de evitar escrupulosamente cualquier conflicto personal entre él y los demás abogados en el pleito. Igualmente es impropio aludir a la historia personal o peculiaridades individuales o idiosincrasias del abogado adversario. Es altamente impropio hacer imputaciones falsas que afecten la reputación y el buen nombre de un compañero.

El Canon 35, además, exige que la conducta de los miembros de la profesión legal ha de ser sincera y honrada, tanto para con sus representados como para sus compañeros. Los deberes y normas anteriormente reseñadas han sido violados en forma crasa y repetida por el licenciado Ramírez mediante la conducta que ha quedado descrita.

V

Se manifiesta repetidamente en el querellado una tendencia a imputar prejuicio y a pedir la recusación de los jueces ante los que litiga, sin fundamento para tales imputaciones y sin otra razón que haberle fallado en contra algún planteamiento legal. Así, por ejemplo, presentó una querella contra el Juez, Hon. Heriberto Sepúlveda Santiago y pidió su inhibición, acusándolo de perseguirle y de haberse confabulado con la Jueza Román y con la licenciada Mangual, en su contra. (Esta "querella" fue presentada en el Tribunal de Primera Instancia en Arecibo y no ante nosotros, mediante un escrito con el epígrafe "In Re: Heriberto Sepúlveda".)

Además, imputó prejuicio a la Jueza, Hon. Edna Abruña, acusándola de estar prejuiciada a favor de otro abogado; le imputó al Juez Badillo

firmar una resolución escrita por otro magistrado, refiriéndose al Juez Sepúlveda; le imputó a la Jueza Román haber actuado maliciosamente, violando los Canones de Ética Judicial y nos solicitó su desaforo.

Una vez la querella fue presentada ante nos, acusó al Comisionado Cumpiano de iniciar una persecución en su contra y solicitó, además, en varias ocasiones, la inhibición del Comisionado Hermida. (Como hecho curioso se relata que también el hijo del licenciado Ramírez, **quien no es abogado**, recurrió **"por derecho propio"** ante el Comisionado Hermida solicitándole su inhibición.) El licenciado Ramírez, en su escrito de 4 de septiembre de 1999, titulado "Sobre el informe del Procurador General" también solicita la inhibición del Juez Fabré "para evitar ser tachado de injusto habiendo declarado públicamente su parcialidad".

Aparte de la violación al Canon 9, que exige que el abogado observe una conducta de respeto para con los tribunales y desalentar y evitar ataques injustificados contra jueces y contra el buen orden en la administración de la justicia, así como del criterio general de los deberes del abogado para con los tribunales, que obliga al abogado a actuar de forma tal que prevalezca siempre en los tribunales un ambiente de decoro y solemnidad, nos percatamos de que el querellado no maneja adecuadamente el recurso procesal de la recusación e inhibición de jueces. Véase, 32 L.P.R.A. Ap. III, R. 63; Ramírez de Ferrer v. Mari Bras y C.E.E., Res. el 10 de abril de 1997, 142 D.P.R. ___ (1997).

VI

Las continuas dilaciones y suspensiones ocasionadas por dicho abogado en el caso CAC-96-0485, por su constante incumplimiento a las órdenes del tribunal, lo cual atribuye al señor Procurador General al precario estado de salud del querellado y a su incapacidad para reconocer las limitaciones que su estado de salud le ocasiona para ejercer cabal y adecuadamente las funciones y deberes propios de la práctica de su profesión, y las lesiones que ocasiona a los derechos e intereses de los representados a los que tiene la obligación de defender adecuadamente,

violan los Cánones 18 y 12 de Ética Profesional. El Canon 18 prohíbe al abogado asumir una representación legal cuando no pueda rendir una labor idónea y competente. El Canon 12, a su vez, establece el deber del abogado para con el tribunal, sus compañeros, las partes y los testigos de ser puntual en su asistencia y conciso y exacto en el trámite de sus causas. Para ello ha de desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en la tramitación y solución de las controversias, excepto cuando existan razones poderosas y sea indispensable para la protección de los derechos de su cliente.

## VII

Hemos de señalar también la violación del querellado al Canon 21, al incurrir en conflicto de intereses representando clientes con intereses encontrados, no obstante haber sido apercibido de ello por el Tribunal. Ante el asomo de dicho conflicto el licenciado Ramírez debió haber renunciado a la representación legal de sus clientes inmediatamente. Véase además In Re: Belén Trujillo, 126 D.P.R 743 (1990).

## VIII

Considerando todo lo anteriormente reseñado este Tribunal concluye que el licenciado Ramírez no está capacitado para practicar la profesión de abogado al no poder sujetar su conducta a las normas que rigen dicha profesión ni poder representar a sus clientes de forma adecuada y competente, por lo que decretamos su inmediata suspensión de la práctica de la abogacía en Puerto Rico.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO**Error! Bookmark not defined.**

In Re:


Efraím Ramírez Ramírez


CP-97-4
AB-94-96
AB-98-201
AB-99-93

SENTENCIA

San Juan, Puerto Rico a 26 de mayo de 2000


Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente, se dicta Sentencia decretando la suspensión inmediata e indefinida del ejercicio de la profesión de abogado, y de la notaría, al Lcdo. Efraím Ramírez Ramírez, a partir de la notificación de la presente Opinión. Se le impone el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los foros judiciales y administrativos del País. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador General.

La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra y sello notarial de Lcdo. Efraím Ramírez Ramírez, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Negrón García inhibido. El Juez Asociado señor Fuster Berlingeri no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo